UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIELLE Y.,

                              **Plaintiff,**

    vs.                                                      8:19-cv-599
                                                                      (MAD)

ANDREW SAUL,
*Commissioner of Social Security,*

                              **Defendant.**
_____

APPEARANCES:                                   OF COUNSEL:

**CONBOY, MCKAY LAW FIRM**          **LAWRENCE D. HASSELER, ESQ.**
307 State Street
Carthage, New York 13619
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **SEAN SANTEN, ESQ.**
Office of the General Counsel
15 Sudbury Street
Suite 625
Boston, Massachusetts 02203
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    On April 13, 2016, Plaintiff Danielle Y. filed an application for Social Security Disability Insurance Benefits ("DIB"). *See* Dkt. No. 7, Administrative Transcript ("Tr.") at 76. On July 20, 2016, Plaintiff's claims were initially denied. *Id.* at 94–99. Plaintiff made a timely request for a hearing before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision on May

23, 2018. *See id.* at 13–27. Plaintiff made a request to review the unfavorable decision, and on March 20, 2019, the Appeals Council denied Plaintiff's request to review. *See id.* at 1–6.

Plaintiff commenced this action under 42 U.S.C. § 405(g) seeking review of the Commissioner's unfavorable decision. Currently before the Court are the parties' briefs for judgment on the pleadings. *See* Dkt. Nos. 10, 15.

## II. BACKGROUND

Plaintiff's date of birth is October 10, 1975, which made her approximately forty-one years old at the time she filed for DIB on April 13, 2016. *See* Tr. at 40. Plaintiff completed high school, taking only regular classes. *See id.* at 43. Plaintiff testified that she can read and write, and do basic math calculations. *See id.* Plaintiff received job training, specifically as a licensed cosmetologist and a dialysis technician. *See id.* at 43, 46.

Plaintiff worked for FMS New York Services as a certified clinical hemodialysis technician from 2011 until approximately 2016. *See id.* at 44. Plaintiff previously worked for Staff Leasing in the same role prior to the company being bought out by FMS New York Services. *See id.* at 45. Plaintiff's prior work history was as a certified nursing assistant for River Hospital and Claxton Hepburn Medical Center from approximately 2001 to 2008. *See id.* at 45, 205. Plaintiff was also self-employed as a hairdresser in 2003. *See id.* at 45. Plaintiff stated that she stopped working because she "couldn't do it anymore, keep up with it." *Id.* at 67.

Plaintiff lived with her husband and two adult children at the time of the hearing. *See id.* at 40. Plaintiff's husband, who worked for a heating and plumbing company, provided her income at the time of the hearing. *See id.* Plaintiff indicated that she had a driver's license at the time of the hearing, drove herself as her primary method of travel, and did not take public transportation. *See id.* at 41–42. Plaintiff stated that she had to use cruise control due to physical limitations. *See*

2

*id.* at 42. Plaintiff claimed that she primarily left her house for doctor's appointments. *See id.* Plaintiff further stated that she could wash dishes, but that it takes her approximately an hour to complete the task. *See id.* at 59. Plaintiff indicated that she cleans and that she can also cook small meals. *See id.* at 60. Plaintiff stated that she could stand for approximately ten minutes at a time, sit for approximately thirty minutes at a time, and does not walk very much. *See id.* at 60–61, 63. Plaintiff indicated that she had difficulty lifting her nineteen-pound grandson, and her ability to walk up and down stairs varies by the day. *See id.* at 64. Plaintiff had particular difficulty with certain chores, including vacuum cleaning, shopping, and gardening. *See id.* at 60–61. Plaintiff also claimed to have problems grasping items with her right hand after carpal tunnel surgery, but that she can pick up certain items and write. *See id.* at 65.

At Plaintiff's hearing, she described being prevented from working a full-time job because of her back, right leg, right shoulder, migraines, bad anxiety, a little depression, and her right foot. *See id.* at 49–50. Plaintiff described that she had bulging discs with nerve damage that caused pain to her back to the extent that she cannot do her dishes without taking a break, and that a shower caused her discomfort. *See id.* at 51. Plaintiff was prescribed a muscle relaxer for her back pain, but that only helped the numbness to her foot. *See id.* at 52. Plaintiff indicated that a tumor in her right kneecap had to be removed, and a rod was subsequently placed in her fibula. *See id.* at 52–53. Plaintiff's her leg pain reportedly increased after the surgery, and another rod had to be placed in her tibia. *See id.* at 53. Plaintiff described constant numbness and tingling in her right leg and foot. *See id.* Plaintiff indicated that she had pain in her right shoulder that stemmed from her back pain. *See id.* at 54. Plaintiff also claimed that she suffered from migraines approximately two times a week, with the most severe migraines lasting two or three days. *See id.* Plaintiff further indicated she could function slightly with her mild migraines, and

took medication at times for them. *See id.* at 55. Plaintiff also claimed that she had pain in her right foot, related to her leg pain; she also had surgery on the same foot for a heel spur. *See id.* at 55–56. At the time of the hearing, Plaintiff indicated that she took medication for anxiety and depression. *See id.* at 56.

In a decision dated May 23, 2018, the ALJ determined that Plaintiff was not disabled under the Social Security Act. *See id.* at 13–27. Plaintiff timely filed a request for review by the Appeals Council, *see id.* at 12, and the Appeals Council denied her request for review, rendering the ALJ's decision the Commissioner's final decision. *See id.* at 1–6. In her decision, the ALJ found the following: (1) Plaintiff had not engaged in substantial gainful activity since April 1, 2016; (2) Plaintiff's severe impairments include spine disorder, right knee disorder, right plantar fasciitis, migraine headaches, asthma, and mental impairment (variously characterized); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments; (4) Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with limitations including to not kneel, crouch, crawl or climb ladders, ropes or scaffolds, to not reach overhead, to change position for at least five minutes after sitting for forty-five minutes, to work predominantly with objects rather than people, to not have concentrated exposure to respiratory irritants, to not be exposed to more than moderate levels of noise, to avoid work outdoors and work with bright or flickering flights, to not use foot controls, and to perform simple and routine work with a low level of work pressure; (5) Plaintiff's RFC renders her not capable of performing past relevant work; and (6) considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

*See id.* at 18–26. Accordingly, the ALJ found that Plaintiff is not disabled as defined in the Social Security Act. *See id.* at 27.

Plaintiff commenced this action for judicial review of the denial of her claims by the filing of a complaint on May 21, 2019. *See* Dkt. No. 1. The parties have filed briefs for judgment on the pleadings. *See* Dkt. Nos. 10, 15.

## III. DISCUSSION

### A. Standard of Review

A person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)) (other citation omitted). "The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step." *Id.* (citation omitted).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court

must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)) (other citations omitted). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

**B.     The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2016, the alleged onset date. *See* Tr. at 18. At step two, the ALJ concluded that Plaintiff had the following severe impairments: spine disorder, right knee disorder, right plantar fasciitis, migraine headaches, asthma, and mental impairment (variously characterized). *See id*. at 18–20. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that functionally equals the severity of any impairment

6

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id*. at 20–21. The ALJ then found that Plaintiff

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally stoop, balance and climb stairs and ramps, but can never kneel, crouch, crawl or climb ladders, ropes or scaffolds. She cannot reach overhead, but can frequently reach in all directions with both upper extremities, and can frequently handle, finger and feel with the non-dominant arm. She has no restrictions for handling, fingering, and feeling with her dominant arm. She must be allowed to change position for at least 5 minutes after sitting for 45 minutes, but retains the ability to stay on task. She cannot tolerate concentrated exposure to respiratory irritants. She can tolerate no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of Occupations 1993 Edition: should avoid work outdoors in bright sunshine and work with bright or flickering lights such as would be experienced in welding or cutting metals. She can tolerate a low level of work pressure defined as work not requiring multitasking, detailed job tasks, significant independent judgment, a production rate pace, sharing of job tasks. She can perform simple and routine work, which does not require more than simple, short interactions with supervisors or coworkers; requires occasional contact with the public, and, although the claimant may work in proximity with others, the tasks do not require working in conjunction with others and predominantly involve working with objects rather than people. The claimant cannot use foot controls.

*Id*. at 21–25. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. *See id*. at 25. At the fifth and final step of the analysis, the ALJ solicited the testimony of a vocational expert. *See id*. at 26. The vocational expert testified that a hypothetical individual of Plaintiff's age, with her education, past relevant work experience, and RFC (as described above) could perform the representative occupations of addresser and document preparer. *See id*. The ALJ relied on this testimony to determine that Plaintiff was not disabled as defined by the Social Security Act. *See id*. at 27.

7

C.   **Analysis**

Plaintiff contends that the ALJ's determination denying her disability application should be remanded back to the Commissioner for the following reasons: (1) the Commissioner failed to properly evaluate Plaintiff's credibility and subjective complaints of disabling symptoms; and (2) the Commissioner failed to properly assess Plaintiff's RFC. *See* Dkt. No. 10 at 16–22.

### *1. The ALJ's Evaluation of Plaintiff's Credibility and Subjective Symptom Description*

Plaintiff claims that the ALJ committed reversible error by failing to properly utilize the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) in evaluating her credibility and the subjective symptoms that she claimed were disabling. *See id.* at 16–18.

An ALJ must evaluate the intensity and persistence of a claimant's symptoms and any functional limitations attendant to them in order to determine how they affect a claimant's capacity for work. *See* 20 C.F.R. § 416.929(c)(1). Since symptoms such as pain sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the ALJ must carefully consider any other information submitted by the claimant for its consistency with any and all relevant evidence. *See* 20 C.F.R. § 416.929(c)(3). A claimant's statement(s) about the intensity and persistence of a particular symptom, such as pain, or about the limiting effects the symptoms have on his or her ability to work will not be rejected solely because the available objective medical evidence does not substantiate a claimant's statement(s). *See* 20 C.F.R. § 416.929(c)(2). "However, the ALJ is not obliged to accept without question the credibility of such subjective evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (citing *Martone v. Apfel,* 70 F. Supp. 2d 145, 151 (N.D.N.Y. 1999)) (internal citation omitted). "When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate

8

would produce such pain, it is entitled to considerable weight." *Crysler v. Astrue*, 563 F. Supp. 2d 418, 439-40 (N.D.N.Y. 2008) (citations omitted).

"However, if a claimant's statements about his or her symptoms are not substantiated by the objective medical evidence, the ALJ must consider the other evidence and make a finding on the credibility of the individual's statements." *Chicocki v. Astrue*, 534 Fed. Appx. 71, 76 (2d Cir. 2013) (citation omitted). In doing so, the ALJ should consider:

> (1) [the claimant's] daily activities;
>
> (2) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
>
> (3) Precipitating and aggravating factors;
>
> (4) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms;
>
> (5) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms;
>
> (6) Any measures [the claimant] use[s] or ha[s] used to relieve pain or other symptoms . . . ; and
>
> (7) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

*Id.* (citing 20 C.F.R. § 416.929(c)(3)). In doing so, the ALJ will "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. § 416.929(c)(4). The claimant's symptoms will "be determined to diminish [their] capacity for basic work activities . . . to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(c)(4).

"An ALJ rejecting subjective testimony 'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Abdulsalam v. Comm'r of Soc. Sec.*, No. 5:12-CV-1631, 2014 WL 420465, *6 (N.D.N.Y. Feb. 4, 2014) (quoting *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998)) (other citation omitted). Further, the Agency rules provide that

> [i]n evaluating an individual's symptoms, it is not sufficient for [the] adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for [the] adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3P, 2017 WL 5180304, at *10.

To the extent that Plaintiff is claiming that the ALJ failed to sufficiently support her credibility determination, the Court disagrees. *See* Dkt. No. 10 at 17. The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." Tr. at 22. The ALJ cited multiple instances of such inconsistencies throughout her decision, recounting Plaintiff's treatment history and describing Plaintiff's medical records in detail.

First, the ALJ determined that Plaintiff's allegations were inconsistent with objective findings. *See* Tr. at 22–25. The ALJ determined that although "diagnostic images showed abnormal clinical findings in her cervical, thoracic, and lumbar spine, pain management records

indicated that [Plaintiff] had no neurological deficits, range of motion was within normal limits in her extremities, motor function was grossly intact in the extremities, the straight leg raise was negative bilaterally, and gait was normal." *Id.* at 23. Plaintiff's "back/spine, musculoskeletal, and neurological evaluations were normal." *Id.* at 23–24. Emergency room records indicated that Plaintiff "denied experiencing any lumbar pain, joint pain, or extremity pain." *Id.* at 24. Plaintiff similarly "reported to improvement in her musculoskeletal symptoms with treatment." *Id.* Indeed, after undergoing right endoscopic plantar fascia release, "postoperative records indicated that her muscle strength was normal and range of motion was normal and pain free." *Id.* After undergoing a procedure to treat her endondroma, Plaintiff "stated that she was doing well postoperatively." *Id.*

Furthermore, although Plaintiff complained of migraine headaches, the ALJ's review of the medical records "indicated that she denied experiencing any neurological symptoms, including headaches . . . [even] refus[ing] to take medication to treat her severe migraine headaches." *Id.* Despite a history of asthma, the ALJ's review of the medical records "showed that [Plaintiff's] lungs were clear." *Id.* Plaintiff "also smoked cigarettes during the period under review, which contradicts her claim of a debilitating respiratory disorder." *Id.* at 25. Moreover, while Plaintiff "is prescribed psychotropic medications, she denied any history of psychiatric hospitalizations, and the record does not contain any formal counseling sessions," with medical records indicating that Plaintiff's psychological evaluations were normal, and with Plaintiff regularly denying experiencing any psychological symptoms. *Id.* Based on the record before the Court, the ALJ was empowered to exercise discretion to "arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Taylor v. Barnhart*, 83 Fed. Appx. 347, 350 (2d Cir. 2003) (internal quotation omitted).

Second, the ALJ determined that Plaintiff's reported activities were inconsistent with her allegations of debilitating pain. As the ALJ noted, at Plaintiff's consultative evaluation, she stated that "she could attend to her personal needs, cook, do laundry, go shopping and engage in leisure activities." Tr. at 25. Furthermore, Plaintiff "drove the distance of 50 miles one-way to the consultative evaluation." *Id.* Moreover, as the Commissioner alleges, there are other instances in the record that support the ALJ's conclusion, including that Plaintiff "only went a couple times [to physical therapy,] stating that she 'does physical therapy all day,'" mentioning that her daily activities include "'going up and down the stairs constantly all day, taking care of the grandchildren and their laundry' as well as doing farming chores like milking cows." *Id.* at 1291; Dkt. No. 15 at 9.

In the present matter, in finding that Plaintiff could perform at the level of sedentary work, substantial evidence supports the ALJ's evaluation of Plaintiff's subjective symptom description. As the Commissioner correctly contends, the ALJ largely credited Plaintiff's subjective complaints with respect to her allegations of functionally limiting pain. Although Plaintiff protests that the ALJ erred in assessing Plaintiff's disabling symptoms, the ALJ limited Plaintiff to a reduced range of sedentary work, thereby significantly crediting Plaintiff's subjective complaints. *See* Tr. at 21–25. Indeed, throughout the ALJ's decision, she specifically acknowledged precipitating and aggravating factors of Plaintiff's pain complaints, including her testimony regarding difficulties washing dishes, walking, and sitting for extended periods of time. *See id.* at 22. The ALJ examined records that reflected that prolonged sitting exacerbated Plaintiff's back pain, but that this "was alleviated by postural adjustments, which I have accounted for within the established residual functional capacity . . . ." *Id.* The ALJ accounted for Plaintiff's migraine headaches "by limiting her to no more than moderate levels of noise." *Id.* at 24.

Furthermore, the ALJ accounted for Plaintiff's breathing difficulties "by including respiratory limitations within the residual functional capacity." *Id.* at 25.

Plaintiff also alleges that Plaintiff's "prior work ethic" entitles her to substantial credibility. Dkt. No. 10 at 17–18. The fact that Plaintiff's "good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination." *Wavercak v. Astrue*, 420 Fed. Appx. 91, 94 (2d Cir. 2011). Despite Plaintiff's assertion to the contrary, the ALJ did not ignore Plaintiff's work history. The ALJ was well-aware of Plaintiff's previous employment, discussing it with Plaintiff during the hearing, and considering it in her analysis when she concluded that Plaintiff's RFC prevented her from performing past relevant work, "including nurse assistant, dialysis technician, and hair stylist." Tr. at 25, 44–50.

While Plaintiff argues that the ALJ's decision should be rejected because the ALJ did not specifically discuss and analyze the seven factors listed in 20 C.F.R. § 416.929(c)(3), the ALJ provided specific reasons for her credibility determination, as outlined above. *See Chicocki*, 534 Fed. Appx. at 75 ("Because the ALJ thoroughly explained his credibility determination and the record evidence permits us to glean the rationale of the ALJ's decision, the ALJ's failure to discuss those factors not relevant to his credibility determination does not require remand"). Based on the foregoing, the Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective symptom description.

### 2. Plaintiff's RFC

Plaintiff contends that the ALJ "selected portions of doctors' opinions to accept or deny without the necessary support to do so," with respect to both Plaintiff's alleged physical and

mental limitations. Dkt. No. 10 at 19–22.[1] Although an ALJ's conclusion "may not perfectly correspond with any of the opinions of medical sources cited in [the] decision," an ALJ is "entitled to weigh all of the evidence to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict")).

### a. Physical medical opinion evidence

Plaintiff contends that the ALJ rejected the standing and walking limitations of Drs. Wasicek and Majak without contrary opinion evidence. *See* Dkt. No. 10 at 20. The medical records of Drs. Lorensen and Chandrasekhar reflect opinions that Plaintiff had greater abilities for standing and walking than the opinions of Drs. Wasicek and Majak. *See* Tr. at 818, 1546. Dr. Lorensen concluded that Plaintiff had "no gross limitations sitting, standing, walking, or handling small objects with the hands. Moderate limitations bending, lifting, and reaching." *Id.* at 818. Dr. Chandrasekhar indicated that, after reviewing Plaintiff's entire medical record, that she was capable of standing and walking for six hours in an eight hour work day, and standing and walking for five hours at one time without interruption. *See id.* at 1546. Dr. Chandrasekhar also

---

[1] Plaintiff also alleges that the ALJ failed to consider medical records from Drs. Kramer, Fish, and Damrom. *See* Dkt. No. 10 at 22. However, in her decision, the ALJ cited treatment records from all three doctors. *See* Tr. at 19 (citing to Dr. Damron's records, Tr. at 1281, 1297); *id.* at 22 (citing to Dr. Damron's records, Tr. at 1297, 1422, 1444); *id.* at 24 (citing to Dr. Kramer's records, Tr. at 811, 1101, 1461; citing to Dr. Fish's records, Tr. at 693, 914; citing to Dr. Damron's records, Tr. at 1281, 1287, 1297, 1412, 1422); *id.* at 25 (citing to Dr. Kramer's records, Tr. at 1459; citing to Dr. Fish's records, Tr. at 693, 911, 916). While the ALJ may not have specifically named these doctors, she referred to their records throughout her analysis. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered")). As such, the Court finds no error in the ALJ's consideration of this evidence.

explained that Plaintiff attained a good result from her right leg surgery and that physical findings have been mild. *See id.* at 1542.

The ALJ also found Drs. Wasicek and Majak's opinions regarding Plaintiff's standing and walking limitations inconsistent with Plaintiff's improvements following her surgery, her daily activities, and her report of walking for exercise. *See id.* at 22. While the ALJ did state that the restrictions of these doctors were "an overestimate of the claimant's limitations," she did so because "the claimant acknowledged to improvement in her symptoms following surgical intervention on December 22, 2016 and on May 4, 2017." *Id.* (citing to Tr. at 1422, 1444). While Plaintiff argues that these instances were "outliers," *see* Dkt. No. 10 at 20, in September 2017, Plaintiff also reported that her "[j]oint pain and difficulty walking have resolved." Tr. at 1491.

The ALJ also found that the postural limitations of Dr. Majak were inconsistent with the claimant's "activities of daily living." *Id.* at 22. While Plaintiff asserts that the ALJ did not offer any specific examples to support this rejection, *see* Dkt. No. 10 at 21, the ALJ did, in fact, cite to the medical records of Dr. Lorensen for a list of Plaintiff's claimed daily activities. *See* Tr. at 816. While Plaintiff does accurately allege that she reported walking as a form of exercise before her alleged onset date of disability, *see* Dkt. No. 10 at 20, courts have considered reports of a plaintiff's condition prior to an alleged onset date of disability if it is close in temporal proximity. *See Crowley v. Barnhart*, 220 F. Supp. 2d 176, 181 (W.D.N.Y. 2002) ("Notably . . . three days prior to plaintiff's alleged onset date of disability, plaintiff told his treating physician [that he generally feels well]") (internal citation and quotation omitted). Despite Plaintiff's report being two months prior to her alleged onset date of disability, the Court does not find that the ALJ's consideration of this evidence to be error. Moreover, the Court agrees with the Commissioner that even if the ALJ erred by omitting from the RFC Dr. Majak's opined postural limitations, that

15

error is harmless because the jobs identified by the vocational expert and relied upon by the ALJ do not require postural activities. *See* Dkt. No. 15 at 15; DICOT 209.587-010, 1991 WL 671797 (addresser); DICOT 249.587-018, 1991 WL 672349 (document preparer); *Akey v. Astrue*, 467 Fed. Appx. 15, 17 (2d Cir. 2012) (holding that the ALJ's failure to include limitations in hypothetical questions posted to the vocational expert was harmless because the only jobs the vocational expert identified accommodated those same limitations).

The ALJ did give partial weight to the opinions of Drs. Wasicek and Majak, "because they provided the claimant with treatment, and the other limitations they identified are generally consistent with a range of sedentary work activity." Tr. at 22. The Court does not find that the ALJ's analysis of these medical opinions to be inconsistent with the record as a whole.

### b. Mental medical opinion evidence

Plaintiff first alleges that the ALJ improperly dismissed Dr. Oman's medical opinion "that Plaintiff has a learning disorder that affects her abilities." Dkt. No. 10 at 21. Plaintiff alleges that the ALJ "decide[d] [this] based upon her own personal opinion." *Id.* However, the ALJ provided support for this determination, including that Plaintiff "completed high school in regular education, received training as a certified nurse's assistant, and worked in semi-skilled positions." Tr. at 20. Furthermore, the ALJ stated that "what the impairment is called is of no real consequence; rather how a given impairment affects mental functioning is the central inquiry under the Act. By finding the claimant to have a 'severe' mental impairment however characterized, all symptoms affecting her mental functioning have been considered. It is the impact of the disease, and in particular any limitations it may impose upon the claimant's ability to perform basic work functions, that is pivotal to the disability inquiry." *Id.*

16

In the ALJ's decision, she gave great weight to the opinion of State Agency medical consultant Dr. Walker. *See id.* at 23. "State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole." *Cobb v. Comm'r of Soc. Sec.*, No. 5:13-cv-591, 2014 WL 4437566, *6 (N.D.N.Y. Sept. 9, 2014) (quoting *Leach ex. Rel. Murray v. Barnhart,* No. 02 Civ. 3561, 2004 WL 99935, *9 (S.D.N.Y. Jan. 22, 2004)). As Dr. Walker's opinion "may constitute substantial evidence[,]" the ALJ may validly rely on it as long as the opinion is "consistent with the record as a whole." *Id.* According to the ALJ, Dr. Walker's opinion was "consistent with the dearth of abnormal findings and with the limited formal mental health treatment notes in record." Tr. at 23. After a review of the complete record, Dr. Walker found that Dr. Oman's "opinion is an overestimate of the severity of the individual's restrictions/limitations." *Id.* at 89. Dr. Walker supported this conclusion by noting inconsistencies in Plaintiff's statements about her activities and limitations, that Plaintiff reported no symptoms of anxiety, depression, or mania to her primary care physician for periods of time, and that she had no in-patient or outpatient psychiatric treatment history. *See id.* at 88. Therefore, the ALJ validly relied on evidence consistent with the record when she decided not to credit Dr. Oman's medical opinion with regards to Plaintiff having a learned disorder that affected her abilities. *See* 20 C.F.R. § 404.1527(c)(4).

Plaintiff also argues that the ALJ erred in rejecting Dr. Oman's marked restrictions within his psychiatric evaluation. *See* Dkt. No. 10 at 21–22. Plaintiff alleges that the ALJ "should have another mental health professional's opinion that contradicts Dr. Oman's findings." *Id.* at 22. As stated previously, the ALJ gave great weight to the opinion of Dr. Walker, who found that Plaintiff's lack of specialized treatment for her mental health problems was inconsistent with

allegations of disabling mental limitations. *See* Tr. at 88. Furthermore, while Plaintiff argues that she had to forego needed treatment "due to financial and insurance restraints," Dkt. No. 10 at 22, Plaintiff did not direct the Court to any part of the record that supports Plaintiff declining a recommendation for mental health treatment for that reason. *See* Dkt. No. 15 at 18. Furthermore, as the Commissioner argues, while Plaintiff identified anxiety and depression as impairments that affected her ability to work, as Dr. Walker noted, Plaintiff denied anxiety and depression in her primary care visits at times. *See* Tr. at 49–50, 88, 535–63; Dkt. No. 15 at 18. While Plaintiff does attribute the failure to seek treatment to lack of financial ability or insurance, "that does not alter the fact that the contemporaneous notes of physicians claimant did see during the relevant period indicate that she did not complain" of the alleged impairments. *Reynolds v. Colvin*, 570 Fed. Appx. 45, 49 (2d Cir. 2014).

As such, the Court finds that Plaintiff failed to identify any error with regards to the ALJ's discussion of the physical and mental medical opinion evidence in the present matter.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the Commissioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 14, 2020
      Albany, New York

Mae A. D'Agostino
U.S. District Judge